UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALISSA ANN HAZLETT & JOHN SIMS | CIVIL ACTION |
| VERSUS | NO: 18-5266 |
| ST. TAMMANY PARISH SHERIFF'S OFFICE, ET AL. | SECTION: "A" (4) |

### ORDER AND REASONS

The following motion is before the Court: **Motion to Dismiss (Rec. Doc. 16)** filed by Defendants, Sheriff Randy Smith, Chief Deputy Greg Longino, Deputy Grant Candies, Deputy Cristen Graham, and Deputy Matthew Severns. Plaintiffs, Alissa Ann Hazlett and John Sims, have not filed a response to the motion. The motion, submitted on September 5, 2018, is before the Court on the briefs without oral argument.[1]

I. BACKGROUND

This complaint arises first out of an encounter with officers of the St. Tammany Parish Sheriff's Office, and second out of subsequent events at the parish jail. According to the complaint, on May 23, 2017, Deputies Grant Candies, Cristen Graham, and Matthew Severns entered an apartment where Alissa Ann Hazlett and John Sims were sleeping.[2] Sims alleges that he was noticeably disoriented yet Candies nonetheless instigated a confrontation with Sims that led to force. (Rec. Doc. 1, Complaint ¶¶ 16-17).

---

[1] Local Rule 7.5 of the Eastern District of Louisiana requires that memoranda in opposition to a motion be filed eight days prior to the noticed submission date of the motion. This circuit frowns upon a dismissal with prejudice based solely on a litigant's failure to oppose a motion. *See Webb v. Morella*, 457 Fed. Appx. 448, 452 (5th Cir. 2012) (unpublished). The Court therefore addresses Defendants' arguments on the merits.

[2] The complaint gives no indication as to the time that this incident occurred.

Sims claims that Deputies Graham and Severns then joined Candies in beating Sims and wrestling with him. (*Id.* ¶¶ 21-23). Sims alleges that he sustained a fractured skull and that it took over 50 staples to close the hole in his head. (*Id.* ¶ 29).

Hazlett does not allege that she was beaten by the officers. Her complaint is that she was unlawfully detained and forced to sit on the concrete outside even though she suffers from multiple sclerosis ("MS"). (Complaint ¶ 30). Hazlett was placed under arrest and transported to the jail. She alleges that she was arrested because she refused to write a statement to assist in covering up the officers' use of excessive force.[3] (*Id.* ¶ 33).

Plaintiffs' complaint does not conclude with the events of May 23, 2017. Plaintiffs also take issue with their treatment at the St. Tammany Parish jail. Hazlett alleges that she informed the jail staff that she suffers from MS yet she was denied a softer mattress. (*Id.* ¶ 35). Hazlett alleges that she was in the early stages of a pregnancy and when she began to experience vaginal bleeding she was not allowed to see a medical doctor. (*Id.* ¶ 40). Sims complains that after he returned from the emergency room the jail did not provide appropriate monitoring and follow-up treatment for his injuries. (*Id.* ¶ 45).

Plaintiffs filed the instant complaint on May 24, 2018. The named defendants are the St. Tammany Parish Sheriff's Office, Sheriff Randy Smith, Chief Deputy Greg Longino, Deputy Candies, Deputy Graham, and Deputy Severns. The deputy defendants have been sued under federal and state law for excessive force, battery, torture, and

---

[3] While Hazlett alleges that she was arrested for refusing to write a statement in support of the officers, she confuses matters by also alleging that she "did not want to write a false negative statement against [Sims] although she was asked to do so but was made to do so under extreme duress." (Rec. Doc. 1, Complaint ¶ 22). Defendants have attached a copy of this statement to their motion to dismiss. (Rec. Doc. 16-3). In it Hazlett describes Sims's aberrant behavior and details a pharmacopeia of drugs that Sims was taking the night of the arrest.

failure to perform their duties in a safe and reasonable manner.

Sheriff Smith has been sued for failure to train and supervise his deputies as well as for negligent hiring. He has also been sued for the lack of appropriate medical care at the jail. Plaintiffs complain that they did not receive appropriate care due to systemic understaffing problems at the jail. (Complaint ¶¶ 47-48).

Chief Deputy Greg Longino, who Plaintiffs refer to as the warden of the jail, has been sued for the lack of appropriate medical care at the jail.

Defendants now move to dismiss the complaint in its entirety.

## II.  DISCUSSION

### 1.  *St. Tammany Sheriff's Office*

Defendants argue that the St. Tammany Parish Sheriff's Office is not an entity capable of being sued. According to Defendants, Sheriff Smith in his official capacity is the appropriate defendant to answer for any of the claims being asserted.

The motion is GRANTED as to all claims brought against the St. Tammany Parish Sheriff's Office.

### 2.  *May 23, 2017 Physical Altercation*

The deputy defendants and Sheriff Smith argue that all claims arising out of the May 23, 2017 altercation at the apartment are prescribed because Plaintiffs did not file suit until May 24, 2018.

Federal claims brought pursuant to 42 U.S.C. § 1983 follow state law for tolling and for the length of the statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 398 (2007) (citing *Hardin v. Straub*, 490 U.S. 536 (1989); *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484-86 (1980)). A federal court will apply the limitations period governing general personal injury actions in the state where the alleged violation occurred. *See*

*Owens v. Okure*, 488 U.S. 235, 251 (1989). In Louisiana, a one-year prescriptive period applies. La. Civ. Code art. 3492. In computing a prescriptive period, the day that marks the commencement of prescription is not counted. Prescription accrues upon the expiration of the last day of the prescriptive period. La. Civ. Code art. 3454. If a prescriptive period consists of one or more years, prescription accrues upon the expiration of the day of the last year that corresponds with the date of the commencement of prescription. La. Civ. Code. art. 3456; *see Bourg v. Woods*, 31 So. 3d 1123 (La. App. 5th Cir. 2010) (explaining how the one year prescriptive period runs).

The alleged beating that the deputies gave Sims occurred on May 23, 2017. Under Louisiana law, prescription accrued on May 23, 2018. Plaintiffs did not file their complaint until May 24, 2018, which was one day beyond the prescriptive period. Therefore, all claims arising out of the May 23, 2017 physical altercation, regardless of the legal theory relied upon, whether based on federal or state law, are time barred as to all of the defendants.[4]

### 3. *Jail Claims*

The balance of Plaintiffs' claims pertain to their treatment at the St. Tammany Parish jail. The only two defendants implicated in these claims are Sheriff Smith and

---

[4] It is not clear whether Hazlett is asserting claims based on the May 23, 2017 incident, but to the extent that she is asserting such claims, they are time-barred.

Aside from prescription, Defendants contend that Sims's claims for excessive force are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because he pleaded guilty to resisting an officer in conjunction with the May 23rd incident. If *Heck* does apply then technically Sims's federal excessive force claim would not be time-barred because prescription would not begin to run until after the conviction was vacated, which has not yet occurred and may never occur. *Heck* has been applied to bar excessive force claims where the plaintiff was convicted of resisting an officer under Louisiana law. *See Arnold w. Town of Slaughter*, 100 Fed. Appx. 321 (5th Cir. 2004) (unpublished). Thus, ironically the only way that Sims can avoid the time bar is to have *Heck* apply. But if *Heck* applies the claims remain barred until the conviction is set aside.

Chief Deputy Longino. Smith and Longino are sued solely in their official capacities. (Complaint ¶¶ 5, 8). The Court surmises from the complaint that at least part of these jail-related events occurred on May 24, 2017, which means that timeliness is not an issue. The crux of the complaint as to the jail is that Sheriff Smith failed to properly staff the facility with qualified medical personnel in order to provide follow-up care to trauma victims (Complaint ¶ 57); Longino is accused of failing to properly supervise the jail to ensure that inmates receive proper follow-up medical care and monitoring. (*Id.* ¶ 58).

Sims received emergency medical treatment at the hospital before being sent to the jail. Sims's complaint against the jail is that the staff did not provide proper monitoring and follow-up treatment for him. Sims does not elaborate on what specific monitoring and follow-up treatment he should have received.

Hazlett did not have pre-existing injuries when she arrived at the jail but she contends that the staff was very slow to respond and to do a proper medical evaluation when she told them about her MS and that she may be experiencing a miscarriage. (*Id.* ¶ 38). She complains that all that the staff did in response to her complaints is provide sanitary napkins and a pill. (*Id.* ¶ 40).

The constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment. *Estate of Henson v. Wichita County*, 795 F.3d 456, 462 (5th Cir. 2015) (citing *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc)). In this circuit, the legal standard used to measure the due process rights of pretrial detainees depends on whether the detainee challenges the constitutionality of a condition of his confinement or whether he challenges an episodic act or omission of an individual state official. *Id.* (citing *Hare*, 74 F.3d at 644–45). In other words, "constitutional challenges by pretrial detainees may be

brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Id.* (quoting *Shepherd v. Dallas Cnty.,* 591 F.3d 445, 452 (5th Cir. 2009)). Significantly, there is no rule barring a plaintiff from pleading both alternative theories, and a court may properly evaluate each separately. *Id.* at 464 (citing *Shepherd*, 591 F.3d at 452 n.1).

An episodic-acts-or-omissions claim faults specific jail officials for their acts or omissions and the detainee then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission. *Henson*, 795 F.3d at 463 (citing *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997)). With such claims the relevant question becomes whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge. *Id.* Intent is not assumed; rather, the detainee must establish that the offending official violated his constitutional right to be secure in his basic human needs by having "subjective knowledge of a substantial risk of serious harm" to the detainee and then responding to that risk with "deliberate indifference." *Id.* at 464. In other words, the state official must know of and disregard an excessive risk to inmate health and safety. *Id.* (citing *Estate of Henson v. Krajca*, 440 Fed. Appx. 341, 343 (5th Cir. 2011)).

In contrast, a conditions of confinement claim challenges general conditions, practices, rules, or restrictions of pretrial confinement. *Henson*, 795 F.3d at 463 (quoting *Hare*, 74 F.3d at 644). These conditions, practices, or rules can be explicit, or in some cases a condition may reflect an unstated or de facto policy, as evidenced by a pattern of acts or omissions sufficiently extended or pervasive to prove an intended condition or practice. *Id.* (citing *Shepherd*, 591 F.3d at 452). When a plaintiff is challenging a condition of confinement, the court applies the test established by the

Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979), and asks whether the condition is "reasonably related to a legitimate governmental objective." *Id.* (citing *Hare*, 74 F.3d at 646; *Bell*, 441 U.S. at 539). If a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissively may infer that the purpose of the governmental action is "punishment" that may not constitutionally be inflicted upon detainees. *Id.* (quoting *Bell*, 441 U.S. at 539). Because a State's imposition of a condition during pretrial confinement manifests an avowed intent to subject a pretrial detainee to that condition, the plaintiff need not demonstrate that the state actor acted with intent to punish. *Id.* (quoting *Hare*, 74 F.3d at 644).

In their motion to dismiss, Smith and Longino characterize Plaintiffs' allegations as episodic acts or omissions claims and have analyzed them as such. Defendants argue that Plaintiffs have not alleged facts that any jail official had substantial knowledge of a substantial risk of serious harm to either plaintiff, and that anyone at the jail acted with deliberate indifference to Plaintiffs' serious medical needs. In fact, Defendants point out that Plaintiffs not only fail to attribute their injuries to any specific jail employee but rather attribute them to inattentive care, low awareness and slow medical needs response.

As noted above, Plaintiffs did not file a response to Defendants' motion, which might have aided the Court in its own evaluation of the complaint.

The Court agrees with Defendants' arguments as to an episodic acts or omission claim. While the complaint does allege omissions by the jail employees, Plaintiffs are not claiming that any individual state actor at the jail violated their constitutional rights. Instead, Plaintiffs have explicitly chosen to sue Smith and Longino in their official capacities for the lack of treatment attributable to allegedly inadequate staffing at the

jail. It is clear to the Court that Plaintiffs are attempting to allege a condition of confinement claim because they make several references in their complaint to manpower shortages, generalized deterioration of patient care, and dangerous working conditions—systemic conditions which they claim led to inattentiveness to their medical needs.

Given that Defendants did not brief the issue of whether Plaintiffs state a claim under a conditions of confinement theory, the Court will not dismiss Plaintiffs' complaint in its entirety even though it grants Defendants' motions in its entirety.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 16)** filed by Defendants, Sheriff Randy Smith, Chief Deputy Greg Longino, Deputy Grant Candies, Deputy Cristen Graham, and Deputy Matthew Severns is **GRANTED IN PART AND DENIED IN PART** as follows. The motion is **GRANTED** insofar as the complaint is **DISMISSED** in its entirety as to Deputy Grant Candies, Deputy Cristen Graham, and Deputy Matthew Severns. Any claims against Sheriff Smith related to the incident of May 23, 2017 are likewise **DISMISSED**. Any claims against Sheriff Smith and Chief Deputy Longino based on the theory of episodic acts or omissions by jail staff are likewise **DISMISSED**. All claims against the St. Tammany Parish Sheriff's Office are **DISMISSED**. The motion is **DENIED** insofar as the remaining defendants seek to have the complaint dismissed in its entirety;

**IT IS FURTHER ORDERED** that the only claims that remain pending are Plaintiffs' federal condition of confinement claims against Sheriff Smith and Chief Deputy Longino in their official capacities, and any pendant state law claims against these defendants relating to Plaintiffs' detention at the jail. These claims were not part

of Defendants' motion to dismiss;

**IT IS FURTHER ORDERED** that Defendants will be allowed to file a successive Rule 12(b)(6) motion to dismiss if they wish to challenge the remaining claims on the pleadings. Defendants must file any such motion within **fifteen (15) days** of entry of this Order, and the motion must be properly noticed for submission. If Defendants file another motion to dismiss, <u>Plaintiffs must respond under pain of dismissal</u>.

September 13, 2018

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE